Shelby Taylor, of Baton Rouge, for appellants. Jas. A. Gremillion, City Atty., Philip S. Pugh, and L. H. Pugh, all of Crowley, and Dennis T. Canan, Jr., for appellee.

SOMMERVILLE, J.    Plaintiffs appeal from a judgment rejecting their demand for damages against the city of Crowley because of the death of their five year old son, who was drowned from a bridge crossing a drain on the eastern boundary of the city. The negligence and fault alleged against defendant was because of failure to place rails or bannisters on the ends of the bridge.

The bridge in question formed a part of the highway, and extended across Eastern avenue, partly covering a natural drain which extended from one side of the city to the other. Eastern avenue was 75 feet wide, and the bridge crossing it was 16 feet long, from east to west, the direction in which the ditch runs. The evidence shows that the bridge was well built, and in good condition at the time of the accident. It also shows that the little child whose life was lost was on one end of the bridge, playing in the water which filled the ditch. In getting up, his feet slipped, he fell into the water, and he was drowned. Plaintiffs contend that, if a rail had been run along the end of the bridge, the child would not have fallen into the water. But they have failed to prove that it was negligence on the part of defendant not to have put a rail at the end of the bridge. The bridge was of sufficient width and strength to accommodate the traffic on Eastern avenue, which was very limited. It was not shown that the bridge was frequented by children; and the five year old child of plaintiffs was a half mile to a mile from its parents' residence, in the company of two little boys. It has not been deemed necessary in a city of any size to rail all the bridges crossing drains, and we fail to see where the defendant was negligent in not putting rails across the ends of the bridge referred to.

Judgment affirmed.

━━━━━

(79 South. 210)

(No. 22904.)

DUPUIS et al. v. DRAINAGE COM'RS OF SUBDRAINAGE DIST. NO. 1 OF FIFTH POLICE JURY WARD OF ACADIA PARISH.

(June 29, 1918.)

*(Syllabus by the Court.)*

ELECTIONS ⬅️232—FRAUD OR ILLEGALITY—VALIDITY.

An election is vitiated by fraud or illegality which affects the result, and upon such showing will be decreed void and of no effect.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Suit by Joseph Alcide Dupuis and others, citizens and property taxpayers, against the Drainage Commissioners of Subdrainage District No. 1 of the Fifth Police Jury Ward of Acadia Parish, to annul and set aside a special election voting a bond issue. Judgment for defendant, and plaintiffs appeal. Judgment annulled, and judgment ordered in favor of the plaintiffs, declaring the election void.

Gremillion & Smith, of Crowley, for appellants. Percy T. Ogden, Dist. Atty., of Crowley, for appellee.

MONROE, C. J.    Plaintiffs, citizens and property taxpayers of subdrainage district No. 1 of the Fifth police jury ward of Acadia parish, attack an election held on June 28, 1917, for the submission to the qualified voters of that district of a proposition to impose a tax and incur an indebtedness of $40,000, and issue bonds therefor. They allege that, according to the returns, 41 votes were cast for and 40 against the tax,

but that the returns are fraudulent and erroneous, in this: That a certain ballot was assumed to have been cast by David Le Blanc, in favor of the tax, and was so counted, but in fact that no ballot, signed or indorsed "David Le Blanc," was taken from the box in the presence of the bystanders; that a ballot, signed or indorsed "David Istre," was taken out, read, called out, and seen by the bystanders and was counted by the commissioners, as being the ballot supposed to have been cast by David Le Blanc; that it should have been stamped "Spoiled Ballot," and not counted, as no such voter as David Istre lives in the district; and that, had it not been counted in favor of the tax, the election would have resulted in a tie. They further allege that they have been informed and believe:

"That the ballot cast in said election, signed or indorsed 'David Istre,' has been fraudulently removed therefrom and another ballot signed or indorsed 'David Le Blanc,' substituted in its place"; that if, "upon the opening of the said ballot box by the court, it be found that the ballot signed or indorsed 'David Istre,' and which should have been declared a 'spoiled ballot,' and so marked and therefore not counted, has been removed from said ballot box, and by reason thereof not found therein, but, on the contrary, should the substituted ballot, signed or indorsed 'David Le Blanc,' be found in said ballot box, then and in that event the said substituted ballot should be declared * * * to have been fraudulently substituted and placed in said ballot box, and should be declared null and void, cast aside, and said election decreed to have resulted in a tie."

Six witnesses, called by plaintiff, testified that one of the commissioners, to whom the tickets were handed, and whose function it was to announce the names inscribed thereon, called the name "David Istre" from a ticket that he was holding in his hand, and a majority of the six testify that, immediately, some discussion took place between him and the commissioners who were keeping the tallies, to one of whom the ticket was handed. One of the witnesses, who was standing quite near the commissioner, who,

as he says, called "David Istre," testifies that he saw that name written on the ticket; that it was plainly written. One of the tally sheets shows that the name "David Istre" was first written upon it, and then the name "David Le Blanc" substituted therefor. A ticket bearing the name "David Le Blanc" was brought out of the box upon the trial, and one of the commissioners testified that it was he who wrote Le Blanc's name on it. Le Blanc is, apparently, illiterate, but states that he can write his name. He also states that he voted, but is unable to remember who fixed his ticket for him. The ticket was offered in evidence by both sides, but plaintiffs' counsel caused the following note to be made, to wit:

"Counsel for plaintiffs wishes it to be noted on the note of evidence that the said ballot is the only one of the 81 or 82 tickets that were brought out of the box on the trial that had no sign of a crease of fold in it."

And the fact noted remains unchallenged and unexplained; the suggestion in the brief of defendant's counsel not amounting, in our opinion, to an explanation. Four of the five commissioners who were called to the stand testified, either that they did not hear the other commissioner call the name "David Istre," or that it was not called. Among the last of the witnesses who came to the stand, however, was the commissioner who is said to have called the name, and part of his examination reads as follows:

"Q. It has been stated by some of those voting against the tax at said election that you, in calling out the names, called that of David Istre three times, continuously; is that true or not true? A. I may have called David Istre. I may have made that error; but I corrected it, and I can prove it by witnesses, too."

Cross-examination:

"Q. Are you prepared to swear whether there was any discussion as to the name of David Istre when called from the ticket in your hands? A. There was. Q. By whom? A. By us; Duhon had written the name 'Istre' on the tally sheet, and he was looking for Le Blanc. I had

called Le Blanc, undoubtedly. I called Istre, and Mr. Fruge said it was Le Blanc."

Why, holding in his hand a ticket with the name David Le Blanc written on it, the witness should have read it "David Istre," is not explained; nor is it explained why defendant's witnesses deny that he did so read it. The explanation that suggests itself to the mind for the writing of the name David Istre on the tally sheet is that the commissioner was there to write down the names as they were called from the tickets, and hearing the name Istre called, he wrote it down. But that is not the explanation that the commissioner gives. He explains as follows:

"I wrote Istre on the tally sheet by mistake, and the reason why I made that mistake—how it happened—one of his half-brothers is an Istre, and, one time, I wrote him a check, and forgot the name, and wrote it Istre, and he said, 'Not Istre, but Le Blanc.'"

It is undisputed that there was no David Istre living in the district. There is considerable conflict in the testimony upon the subject of the ballot box. Some of the witnesses testify that it was not sealed when taken away by a pro-tax commissioner, after the election; others, that it was sealed. No ticket bearing the name "David Istre" was produced from the box on the trial, and the "David Le Blanc" ticket still looks as if it had just come from the printer, while the others, without exception, are creased and rumpled. Our conclusion is that the "David Istre" ticket was deposited in the box, prepared in that form by the person who undertook to fix Le Blanc's ticket for him, that the error was discovered when Istre's name was called by the commissioner, and that the attempt was made to correct it by putting the Le Blanc ticket in, and taking the Istre ticket out, of the box. But that was too late; it was after the election, which was therefore vitiated.

The judgment appealed from is accordingly annulled, and it is now ordered and adjudged that there be judgment in favor of plaintiffs setting aside the returns, decreeing the election of June 28, 1917, here attached, to be void and of no effect, and condemning the defendant to pay all costs.